591 A.2d 561

**Wallace CREIGHTON**

v.

**STATE of Maryland.**

**Post Conviction No. 89, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

June 26, 1991.

Scott Whitney of the Public Defender's office in Baltimore, for applicant.

No response filed by the State.

Submitted before WILNER, C.J., and BISHOP and ALPERT, JJ.

WILNER, Chief Judge.

In 1963, applicant was convicted by a jury in the Criminal Court of Baltimore (now the Circuit Court for Baltimore City) of first degree murder, for which he was sentenced to life imprisonment. Twenty-six years later, on December 29, 1989, he filed a petition for relief under the Post Conviction Procedure Act seeking (1) a new trial by reason of certain errors alleged to have been committed at his trial and (2) a belated appeal by reason of the failure of his attorney to perfect an appeal from the judgment.

After an evidentiary hearing, Judge Thomas Ward issued an order denying relief. In this application for leave to appeal, applicant does not contest any of the rulings made by Judge Ward with respect to the allegations of trial error.

738

His complaint pertains only to the disallowance of a belated appeal.

## (1) *Allowance of Belated Appeal*

Belated appeals are somewhat of an anomaly. Subject to certain exceptions not relevant here, the Maryland rules have long required that appeals be filed within 30 days after the entry of judgment. In one of the earliest cases reaching this Court, we noted that "[t]here is no provision in the Maryland Rules, or elsewhere, authorizing the lower court to extend the time within which an Order for Appeal to this Court shall be filed." *Cornwell v. State*, 1 Md.App. 576, 577–78, 232 A.2d 281 (1967). Appeals not filed within the time allowed "must be dismissed." *Riviere v. Quinlan*, 210 Md. 76, 77, 122 A.2d 332 (1956).

█ The allowance of a "belated" appeal—one filed after the 30-day (or other allowable) period has run—obviously is inconsistent with this bedrock rule. It is justified—indeed compelled—in certain circumstances arising in criminal cases, however, by supervening principles of due process, and, in those circumstances, it has been allowed. *See Coates v. State*, 180 Md. 502, 25 A.2d 676 (1942); *Beard v. Warden*, 211 Md. 658, 128 A.2d 426 (1957); *Lloyd v. Warden*, 217 Md. 667, 143 A.2d 483 (1958); *State v. Shoemaker*, 225 Md. 639, 171 A.2d 468 (1961). Belated appeals have been allowed where it is shown that the defendant requested an appeal, but either his request was not honored or an appeal noted was summarily dismissed because of (1) actions or omissions by State officials, *Sewell v. Warden*, 235 Md. 615, 618, 200 A.2d 648 (1964); (2) actions or omissions by trial counsel, *State v. Shoemaker, supra;* (3) actions or omissions by appellate counsel, *Wilson v. State*, 284 Md. 664, 672–73, 399 A.2d 256 (1979); or (4) State laws that violate due process, *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 1055 (1956).

### (2) *This Case*

The judgment in this case was entered on June 28, 1963. On July 24, 1963, applicant, through an attorney, Nelson R. Kandel, Esq., filed a Notice of Appeal. The notice appears to be signed by Mr. Kandel; it was in proper form; and it was date-stamped and docketed by the clerk on July 24. The next, and last, notation on the docket is the cryptic statement entered on August 24, 1963, "Appeal to Court of Appeals of Maryland expired by non compliance of rules."

In his amended petition for post-conviction relief, the applicant states:

"The record indicates that on July 24, 1963, Nelson R. Kandell [sic] entered his appearance in the Petitioner's case. On that same date, a notice of appeal was filed that was signed by the Petitioner and Mr. Kandel. Subsequently, on August 24, 1963, the docket entries indicate that the 'Appeal to Court of Appeals of Maryland expired by noncompliance of rules'.

The Petitioner contends that he desired to proceed at all times with his appeal, that he did not cause his appeal to be dismissed and that he relied upon his attorney to perfect his appeal. He alleges that under these circumstances, he should be entitled to receive the opportunity to file a belated appeal. *Shoemaker v. State*, 225 Md. 639 [171 A.2d 468] (1961).

The above allegation has not been litigated in prior proceedings and because it pertains to a fundamental right accruing to the Petitioner, it has not been waived by his failure to raise it in prior proceedings."

In his Memorandum filed pursuant to Md. Rule 4-407, Judge Ward denied relief on two grounds. First, he stated that the applicant "alleged neither attorney error nor offered evidence to show why the appeal was dismissed" and that "the State has rebutted all of the [applicant's] allegations." Second, though recognizing that "[t]he Post Conviction Procedure Act imposes no time limits upon a petitioner," he nonetheless applied a theory of laches and found

that applicant had "waived these allegations by his repeated failure to file his petition." The judge found no justification for the long delay and concluded that "[t]he State should not be prejudiced in its case by the lack of a petitioner's diligence."

We are not satisfied with the first reason given by the judge. Although some of the details given by applicant were rebutted, the facts that he desired to appeal, that an appeal was properly filed, and that, without his knowledge or consent, it was effectively abandoned were *not* rebutted.

Applicant was represented at trial and with respect to a motion for new trial by Tucker Deering, Esq. and William Toadvine, Esq., and he believed that they had been employed by his father to handle his appeal as well. He said that, after being in prison for about six months, he wrote to Mr. Deering to inquire about the appeal and that he received a letter in return stating that Deering was taking care of it. This aspect of his claim was rebutted. Mr. Deering denied any such employment, stating that his representation of applicant ended when the motion for new trial was rejected.

The undeniable fact is, however, that an appeal *was* filed on applicant's behalf—not by Mr. Deering but by Mr. Kandel. It was stipulated that Mr. Kandel had no recollection of filing the appeal, but there is nothing to suggest that the notice of appeal was *not* filed by Mr. Kandel—that the signature on it was not his. Nor is there any evidence that applicant ever desired to abandon the appeal. What we are left with, then, is a fair inference that the appeal was dismissed because Mr. Kandel, who filed it, failed to perfect it.[1] At the time, Md.Rule 825a required that the record be filed with the Court of Appeals within 30 days after the appeal was noted, unless that time was extended. Case law, taken in conjunction with Rule 825d, called for an

---

1. We do not suggest that Mr. Kandel was in any way derelict in his duty. There is nothing in the record to indicate why the appeal was not perfected, or indeed how Mr. Kandel even came to be in the case.

appeal to be dismissed if the record was not filed within that period unless the appellant could affirmatively show that the delay was the fault of the State, the clerk, or the stenographer. The most reasonable inference, then, is that the appeal was dismissed on August 24, 1963—31 days after it was noted—for failure to transmit the record in conformance with Rule 825.

As noted, Judge Ward, applying a theory akin to laches, also found that applicant had waived his allegations by his "repeated failure to file his petition." There was, of course, a considerable delay—26 years. Applicant explained the delay thusly. From 1963 to 1970, he was at the penitentiary where, he said, there was no library, he could get no assistance in preparing a petition, and, "if you were caught writing anything to the courts ... you get your head busted and go to lockup for six months to a year." From 1970 to 1976, he resided at a Camp Center at Brockbridge. He did nothing during that period because "people that I talked to" told him "you wasting your time, nothing can be done, you don't have the kind of money that it takes to get this done or to hire a lawyer to handle it." From 1975 to 1978, he was hoping to get out on parole and devoted his effort to that. Then, in December, 1978, he escaped, remaining at large until April, 1985.

On this record, Judge Ward could properly find that the long delay was inexcusable; he was not obliged to credit applicant's excuses. Petitions for post-conviction relief were routinely filed all during that period by indigent prisoners in virtually every State correctional facility, including the penitentiary, and some of those petitions were successful. One need only look at the 48 pages of annotations under Md.Ann.Code art. 27, § 645A—the heart of the Post Conviction Procedure Act—to attest to the large number of petitions that were filed. The question, which appears not yet to have been decided, is whether laches, or waiver by inaction, applies to proceedings under the Act.

In *Johnson v. Riddle,* 562 F.2d 312 (4th Cir.1977), the Court applied a theory of laches to bar Federal habeas

corpus relief where a claim similar to that made here—failure of counsel to file and perfect an appeal—was made 17 years after the conviction.  Without much discussion, the Court held, in relevant part, at 314:

"Petitioner chose to raise these claims for the first time seventeen years after his trial and conviction, although nothing prevented him from doing so at a time when the State might have had a chance of reconstructing the record and surrounding events in an effort to explain why an appeal was never filed.  We agree with the district court that petitioner's contention is raised too late to avail him.

· · · · ·

In the present case, in contrast, we have only petitioner's allegation that he requested an appeal, and that counsel failed to perfect one.  Based on this allegation, easily made after 17 years of silence but obviously difficult to disprove, petitioner would have us remand for an evidentiary hearing, where, presumably, the State should be required to rebut what, on its face, is a claim that might entitle petitioner to the relief he seeks.  If the State were shown to have a reasonable opportunity to make the kind of factual reconstruction necessary to such a task, that might be another case, but nothing in the record suggests the opportunity exists after a lapse of 17 years.

In arriving at our decision, we also give weight to the fact that petitioner makes no effort to explain or to justify the delay."

Though not cited by the *Johnson* Court, there existed a clear, authoritative basis for applying laches in Federal habeas corpus proceedings.  In 1976, Congress adopted *Rules Governing Section 2254 [Habeas Corpus] Cases In The United States District Courts.*  Pub.L. 94–426.  They appear in Title 28 U.S.C., following § 2254.  Rule 9(a) provides that:

"A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced

in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred."

As the Advisory Committee Note makes clear, Rule 9(a) "is based on the equitable doctrine of laches." It proceeds from the premise, confirmed in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), that "habeas corpus has traditionally been regarded as governed by equitable principles" and that among those principles is "that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." *Id.* at 438, 83 S.Ct. at 849. Thus, according to the Committee Note,

"The standard used for determining if the petitioner shall be barred from asserting his claim is consistent with that used in laches provisions generally. The petitioner is held to a standard of reasonable diligence. Any inference or presumption arising by reason of the failure to attack collaterally a conviction may be disregarded where (1) there has been a change of law or fact (new evidence) or (2) where the court, in the interest of justice, feels that the collateral attack should be entertained and the prisoner makes a proper showing as to why he has not asserted a particular ground for relief."

Delay alone under this Rule does not itself preclude relief, but delay coupled with prejudice *will* suffice to permit a court to deny relief. Compare *Alexander v. State of Md.*, 719 F.2d 1241 (4th Cir.1983) with *Brim v. Solem*, 693 F.2d 44 (8th Cir.1982), *cert. denied*, 460 U.S. 1072, 103 S.Ct. 1530, 75 L.Ed.2d 951 (1983), and *Harris v. Vasquez*, 913 F.2d 606 (9th Cir.1990). *Cf. McCleskey v. Zant*, —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

Virginia, following the Federal lead, has applied the doctrine to State habeas corpus petitions. In *Walker v. Mitchell*, 224 Va. 568, 299 S.E.2d 698, 703 (1983), the Court declared:

"Borrowing from the federal experience, we establish this
rule of decision for Virginia's courts: where the filing of
a petition for habeas corpus claiming ineffective assist-
ance of counsel is so long delayed that the Common-
wealth is prejudiced in its defense of the claim, the
petition may be dismissed unless the petitioner shows
that, in the exercise of reasonable diligence, he could not
have known of the grounds for the petition before the
prejudice occurred."

See also McElrath v. State, 276 S.C. 282, 277 S.E.2d 890
(1981), applying the doctrine to preclude post-conviction
relief; and cf. State v. Larson, 409 N.W.2d 63 (Minn.1987)
and Brewer v. State, 446 N.W.2d 803 (Iowa 1989). Com-
pare, however, In re Stewart, 140 Vt. 351, 438 A.2d 1106
(1981), declining to apply laches to a post-conviction pro-
ceeding.

■ There is, unquestionably, an element of fairness, of
equity, in applying a laches-type doctrine in these cases. It
is not right for a prisoner to sit back and wait for memories
to fade, for records to disappear, for crucial witnesses to die
or otherwise become unavailable to rebut allegations of
incompetence or procedural irregularity before filing his or
her petition. Were we free to do so, we would follow
Virginia and South Carolina and do decisionally what Con-
gress has done for the Federal courts. Our problem is that
the statute—the Post Conviction Procedure Act—does not
seem to allow it. We glean that from four provisions in the
statute—all in § 645A of art. 27.

Section 645A(a)(1) provides that "any person" convicted
of a crime and under sentence, who claims that the judg-
ment or sentence is invalid for reasons stated in the statute,
may institute a proceeding under the Act "provided the
alleged error has not been previously and finally litigated or
waived in the proceedings resulting in the conviction, or in
any other proceeding that the petitioner has taken to
secure relief from his conviction." (Emphasis added.)
Apart from the limitation in subsection (a)(2) that not more
than two petitions arising from each trial may be filed,

those appear to be the only restrictions on the ability to proceed under the Act—that the claim has not been finally litigated or waived in the manner noted.

Subsection (c) specifies more precisely the circumstances under which an allegation of error "shall be deemed to be waived":

"For the purposes of this subtitle, an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances. The burden of proving the existence of such special circumstances shall be upon the petitioner."

The failure to file a petition more promptly—even where prejudice ensues—is not one of the listed circumstances.

Thirdly, subsection (d) sets forth a particular circumstance in which the possibility of a long delay in filing a petition is expressly recognized:

"For the purposes of this subtitle and notwithstanding any other provision hereof, no allegation of error shall be deemed to have been finally litigated or waived where, subsequent to any decision upon the merits thereof or subsequent to any proceeding in which said allegation otherwise may have been waived, any court whose decisions are binding upon the lower courts of this State holds that the Constitution of the United States or of Maryland imposes upon State criminal proceedings a procedural or substantive standard not theretofore recognized, which such standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence."

Finally, with but one exception, not relevant here, subsection (e) states that "[a] petition for relief under this subtitle may be filed at any time...."

Subsection (e) would seem to negate any notion of claim preclusion—a disentitlement from proceeding at all under the Act because of delay. Subsections (a), (c), and (d) focus more on the question of issue preclusion, to which laches is particularly relevant, and seem to negate that as well. Even without these rather formidable barriers, Congress saw the need to provide express authority for the Federal courts to use the doctrine in this context. Absent such clear legislative direction, we can find no warrant under the current Maryland law for our doing so. Denial of the petition on the ground of laches was therefore error.

There is, however, one additional hurdle that applicant must overcome. In *State v. Brown*, 235 Md. 401, 201 A.2d 852 (1964), the Court considered an argument by a post conviction petitioner that he was entitled to a belated appeal because his trial counsel had deprived him of his right to a direct appeal by erroneously telling him that he would have to pay for a transcript which, as an indigent, he could not afford. Responding, the Court held, at 407, 201 A.2d 852:

> "But if we assume, without deciding, that the petitioner might be entitled to a belated appeal under some circumstances, as a remedy to insure that he could obtain as full a review as if he had entered an appeal, we find no error in this record to justify the remedy sought, *since none of the points herein presented, that could have been raised on direct appeal, has any merit.*"

(Emphasis added.)

In taking this approach, the Court added a new element to be considered in belated appeal cases—whether the appeal would have any merit—whether it was likely to succeed. *See also McCoy v. Warden*, 1 Md.App. 108, 122, 227 A.2d 375 (1967) and *cf. Johnson v. State*, 274 Md. 29, 43, 333 A.2d 37 (1975).

The function of a belated appeal is to enable a petitioner to raise in the appellate court those issues of trial error that he could have raised had an appeal been taken and perfected in accordance with the Rules. Just what those issues are in this case is not entirely clear. At the hearing on his petition, applicant complained about voir dire, his absence from bench conferences, the failure of his attorney to order a blood test on the victim, the fact that a juror appeared to be sleeping, and the trial court's refusal to suppress certain statements he made to the police. Certain other claims made in his petition were abandoned.

■ With respect to the blood test, applicant explained that the victim was a police officer who stopped him on a traffic matter and, for no apparent reason, began to beat him. Because a rational officer would not do that, applicant believed that the officer might have been intoxicated, and he said that he asked Mr. Deering to have the officer's blood tested to determine whether it contained intoxicating substances. Mr. Deering testified that applicant had never told him the officer was intoxicated and never asked him to obtain a blood test. This claim, not raised at trial and involving disputed testimony between lawyer and client that did not appear in the trial record, would not have been cognizable in a direct appeal. *Brown v. State*, 237 Md. 492, 498, 207 A.2d 103 (1965). Accordingly, there is no reason to allow a belated appeal on that issue.

■ Appellate review of the other claims of trial error pressed by applicant would have required a transcript of the trial proceedings and any proceeding held on the motion to suppress. Former Md.Rule 826, like current Rule 8–413, required such a transcript to be filed as part of the record on appeal, and placed the burden on the appellant to procure and file the transcript. *Terrell v. State*, 34 Md.App. 418, 367 A.2d 95 (1977); *Van Meter v. State*, 30 Md.App. 406, 352 A.2d 850 (1976); *White v. State*, 8 Md.App. 51, 258 A.2d 50 (1969). It is true, of course, that an appeal will not be dismissed if the failure to produce a transcript "was

caused by the act or omission of a judge, a clerk of court, the court stenographer, or the appellee," but the burden is on the appellant to show that one of them, and not he, was the cause. Md.Rules 8–412(d) and 8–602(a)(5); *Viner v. Manor Country Club*, 258 Md. 299, 303, 265 A.2d 857 (1970).

The record here shows that, due to the inordinate lapse of time, no transcript of the trial can be produced. Counsel agreed:

> "Apparently, there was a transcript prepared for the motion for new trial. Mr. Whitney has investigated this in Annapolis in an attempt to obtain that. Apparently, they do not have a transcript in Annapolis. It has been lost. Mr. Yale Aarons was the court reporter on this case. I talked to him this past weekend. He does not have his notes on the case and I talked with Susan Sheldon last week, who's the Chief Court Reporter over in Courthouse East, who indicated they had destroyed all their notes before 1978. They are only required by law to keep them for twelve years."

It is certainly inferrible from this that had applicant sought his belated appeal within 12 years after his conviction—by 1975—it might have been possible to produce a transcript for review by the appellate court. Solely by his own inaction, however, applicant has made that impossible and thereby prevented an appellate court from properly reviewing his claims of trial error.[2] He has, in other words, made the very remedy he now seeks impossible. Because a belated appeal would necessarily be dismissed under Rule 8–602(a)(5), we find no error in the order denying that relief. *See State v. Standley*, 192 Mont. 54, 626 P.2d 248 (1980).

APPLICATION FOR LEAVE TO APPEAL DENIED.

---

**2.** As the record made at the post-conviction hearing indicates either faded memories or disputes as to what occurred at trial, it is apparent that the parties would be unable to avoid the need for a transcript by stipulating the relevant trial record.