966 A.2d 963

**Guy Emerson MOGUEL**

v.

**STATE of Maryland.**

**No. 2602, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

March 6, 2009.

David P. Henninger, Bel Air, for Appellant.

Daniel J. Jawor (Douglas F. Gansler, Atty. General on the brief), Baltimore, for Appellee.

Panel: DAVIS, SALMON and MARJORIE L. CLAGETT, (specially assigned), JJ.

MARJORIE L. CLAGETT, Judge, specially assigned.

In 1983, appellant, Guy Emerson Moguel, was indicted on charges of possession with intent to distribute marijuana, possession of marijuana, and possession of paraphernalia. On March 4, 1984, in the Circuit Court for Harford County, appellant pled guilty to possession with intent to distribute marijuana. Appellant was sentenced on May 24, 1984, to ninety days' incarceration, with credit for fifteen days time served. On February 28, 2007, appellant filed a Petition for Writ of Error Coram Nobis, alleging that his guilty plea was invalid because neither his counsel nor the court informed him of the potential immigration consequences to him as a resident alien. The State filed an Answer to the Petition for a Writ of Error Coram Nobis, claiming that the Petition was barred by the doctrine of laches.

On June 25, 2007, a hearing on the Petition and the State's Answer was held, and the Answer was treated as a motion to dismiss. As agreed upon by the parties, the hearing was limited to the matter of the Petition's timeliness. In an order entered on September 20, 2007, the circuit court (Marshall, J.) dismissed appellant's Petition, finding the Petition was barred by the doctrine of laches. Appellant timely noted this appeal and presents the following questions:

I. Whether the trial court incorrectly applied the doctrine of laches to the Petition for Writ of Error Coram Nobis.

II. Whether the dismissal of the Petition for Writ of Error Coram Nobis without providing an opportunity to present evidence on the merits was error.

### FACTS AND PROCEDURAL HISTORY

Moguel, emigrated from Belize to the United States in 1970. On July 26, 1983, appellant was indicted on charges of posses-

sion with intent to distribute marijuana, possession of marijuana, and possession of paraphernalia. He pled guilty on March 4, 1984, to possession with intent to distribute marijuana. As noted, he was sentenced on May 24, 1984, to ninety days with credit for fifteen days time served. At the time of his plea, it is alleged that neither appellant's counsel nor the circuit court informed appellant of the possible immigration consequences he could face as a resident alien if he were to plead guilty.

Appellant did not appeal his plea or sentence and took no action to challenge the validity of his plea until he filed a Petition for Writ of Error Coram Nobis on February 28, 2007. The Petition alleged that appellant's guilty plea was invalid on the grounds of ineffective assistance of counsel, due to his attorney's failure to inform him of potential immigration consequences he could be subjected to if he were to plead guilty. Further, appellant alleged that the circuit court did not advise him of potential immigration consequences. Appellant maintained that, had he been advised of these consequences, he would not have pled guilty. The State's Answer to the Petition for a Writ of Error Coram Nobis was filed March 26, 2007, and claimed that the Petition was barred by the doctrine of laches. Appellant's Petition was amended on May 22, 2007 to allege that the Petition was not barred by the doctrine of laches. A hearing was held on June 25, 2007, and the circuit court treated the State's Answer as a motion to dismiss. As agreed upon by the parties, the hearing was limited to the matter of the Petition's timeliness.

At the hearing, the State argued that the delay in appellant's challenge of his conviction would prevent the State from defending the validity of the plea. The State contended that, due to appellant's inaction, the transcript and the court reporter's notes from the plea hearing were unavailable. No transcript had ever been ordered in the case, and the court reporter's notes, which were preserved for twelve years after a hearing, had been destroyed. The State also argued that, even if appellant had not been advised of the impact of his plea

and conviction on his immigration status, he suffered no prejudice, because no action in twenty-three years regarding his immigration status had been taken against appellant due to his conviction, and it was unlikely any action would be taken in the future.

Appellant argued that the conviction not only subjected him to deportation, but it also prevented him from obtaining a passport to travel to and from the Caribbean. Also, appellant learned, when he was attempting a trip to his native country, Belize, that he could be prevented from returning to the United States due to his criminal record. Appellant submitted that he intended to call his trial counsel from 1984, who would testify that he never informed appellant about the immigration consequences of a plea and conviction. The circuit court noted that the trial judge who heard appellant's 1984 plea and sentencing was unavailable to testify.

On September 20, 2007, the circuit court issued a memorandum opinion and order, which found that the Petition was barred by the doctrine of laches, citing the inexcusable delay of twenty-three years and the fact that the State would be prejudiced by the lack of transcript and its inability to rebut appellant's claim. The court also addressed the merits of appellant's Petition and opined that it was unlikely a claim of ineffective assistance of counsel would prevail, since Maryland Rule 4–242(e), which provides that a defendant who is not a United States citizen should be advised of the potential collateral consequences of his plea, did not go into effect until fifteen years after appellant's 1984 plea. Further, the failure to advise a defendant of immigration consequences is not dispositive of an invalid plea, even with the application of Rule 4–242(e). Also, the circuit court found that appellant's potential alleged immigration consequences were speculative at best.

## ANALYSIS

### I.

Appellant does not challenge the circuit court's findings; he simply asserts that the doctrine of laches does not apply to

petitions for writs of error coram nobis, and, therefore, the lower court erred in dismissing appellant's Petition on this ground. Appellant contends that, because the doctrine of laches does not apply to petitions under the Maryland Uniform Post Conviction Procedure Act (UPPA), the doctrine of laches should not apply to writs of error coram nobis.

Appellant relies on two cases, *Skok v. State*, 361 Md. 52, 760 A.2d 647 (2000), and *Creighton v. State*, 87 Md.App. 736, 591 A.2d 561 (1991), to support this contention. In *Skok v. State*, the Court of Appeals applied certain principles of the UPPA to a petition for writ of error coram nobis, stating "the same body of law concerning waiver and final litigation of an issue, which is applicable under the Maryland Post Conviction Procedure Act, Code (1957, 1996 Repl.Vol., 1999 Supp.), Art. 27, § 645A (b) through (d), shall be applicable to a coram nobis proceeding challenging a criminal conviction." *Skok v. State*, 361 Md. at 79, 760 A.2d at 662. In *Creighton, supra,* this Court held that the defense of laches does not apply to petitions under the UPPA. 87 Md.App. at 744–746, 591 A.2d at 565–566. Appellant concludes that since the Court of Appeals' holding in *Skok* equated principles of waiver and final litigation under the UPPA to petitions for writs of error coram nobis, and the Court in *Creighton* held that petitions under the UPPA are not barred by laches, then it follows that petitions for writs of error coram nobis are not barred by laches.

We disagree. The analogy appellant attempts to forge between a petition for writ of error coram nobis and the UPPA is flawed. In *Skok*, the Court of Appeals paralleled *only* the principles of waiver and final litigation of the UPPA to petitions for writs of error coram nobis. The Court of Appeals' application of these narrow principles to the coram nobis petitions does not render every principle of a post-conviction proceeding applicable to writs of error coram nobis.

We hold that the doctrine of laches is a defense to a petition for writ of error coram nobis action filed for the purpose of challenging a criminal conviction. A writ of error coram nobis is an equitable action originating in common law

and is still available as an action in Maryland. One of the earliest coram nobis cases in Maryland is *Hawkins v. Bowie*, 9 G. & J. 428 (1838), which held that writs of error coram nobis were for the purpose of correcting errors of fact. This was later developed in *Madison v. State*, 205 Md. 425, 432, 109 A.2d 96, 99 (1954):

> At common law the ancient writ of error coram nobis has been available to correct errors of fact. It has been allowed, without limitation of time, for facts affecting the validity and regularity of the judgment, and has been used in both civil and criminal cases. While the occasions for its use have been infrequent, no one has doubted its availability. It is still available in Maryland in both civil and criminal cases.

In *Ruby v. State*, 353 Md. 100, 724 A.2d 673 (1999), the Court of Appeals stated: "At common law, a proceeding on a writ of error coram nobis was a civil matter procedurally independent of the underlying judgment being contested," *Id.* at 107, 724 A.2d at 677. The Court added that "a writ of error coram nobis remains a civil matter in Maryland, independent of the underlying action from which it arose." *Id.* at 111, 724 A.2d at 678–679.

*Hawkins and Madison* only addressed coram nobis actions challenging judgments based on errors of fact, and *Skok* expanded the writs to permit challenges to criminal convictions based on errors of law. Further, *Skok* held that "grounds for challenging the criminal conviction must be of a constitutional, jurisdictional or fundamental character," 361 Md. at 78, 760 A.2d at 661 (citing *United States v. Morgan*, 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248 (1954)). The *Skok* Court also held that, to succeed on a petition for writ of error coram nobis, "the coram nobis petitioner must be suffering or facing significant collateral consequences from the conviction." 361 Md. at 79, 760 A.2d at 661. Six years after *Skok*, Maryland Rule 15–1201 *et seq.* came into effect, codifying the procedure for petitioning for a writ of error coram nobis in the context of challenging criminal convictions. The Rules provide that the petition must include, *inter alia*, "the

allegations of error upon which the petition is based," and the "significant collateral consequences that resulted from the challenged conviction." Md. Rule 15–1202(D), 15–1202(F).

■ As the State accurately describes, a court's ability to grant a writ of error coram nobis arises out of the court's equity jurisdiction. *See Keane v. State,* 164 Md. 685, 689, 166 A. 410, 411 (1933). The State argues that, because a petition for writ of error coram nobis is an equitable action, the equitable defense of laches should apply. The State also asserts that the doctrine of laches applies to coram nobis actions attacking civil judgments, and thus laches should apply to coram nobis actions attacking criminal convictions. Maryland Rule 15–1201 *et seq.,* does not provide for a statute of limitations on petitions for writs of error coram nobis, but Maryland Rule 2–323(g) lists laches as an affirmative defense in civil proceedings. The defense of laches in civil actions generally can be asserted by a party or invoked by the court on its own initiative. Here, the State, through its Answer, properly asserted the doctrine of laches as a defense to appellant's Petition.

The Court of Appeals in *Kemp v. Cook,* 18 Md. 130 (1861), and in *Brothers v. Tilken,* 236 Md. 267, 203 A.2d 702 (1964), applied the doctrine of laches to coram nobis petitions. These cases involved challenges to civil judgments, but the State maintains that the application of laches did not turn on the civil nature of the underlying judgments. Both *Kemp* and *Brothers* dealt with judgments entered against minors lacking guardians. The minors did not challenge these judgments until after they became adults—in *Kemp,* the petitioner waited nine years after the judgment, and in *Brothers,* the petitioner waited five years. Relying on *Kemp,* the Court of Appeals in *Brothers* stated that the party seeking to strike out a judgment must "show that he or she has acted in good faith and with reasonable diligence. If the party knowingly acquiesces in the judgment or has been guilty of laches or unreasonable delay in seeking his or her remedy, relief will be denied." *Brothers v. Tilken,* 236 Md. at 270, 203 A.2d at 703. Neither

*Kemp* nor *Brothers* limited the application of the doctrine of laches to only those coram nobis actions challenging civil judgments.

Despite there being no definitive Maryland case law resolving the issue as to whether the doctrine of laches applies to petitions for writs of error coram nobis attacking criminal convictions, the application of the doctrine of laches to criminal convictions has been alluded to in either dissent or dicta. In *Holmes v. State,* 401 Md. 429, 932 A.2d 698 (2007), Judge Raker, joined by Chief Judge Bell and Judge Greene, stated in dissent:

> It appears to be the common law rule that there was no time limitation within which to file a petition for a writ of coram nobis, except perhaps laches ... [T]he right to file for coram nobis relief is not unlimited.
>
> \* \* \*
>
> Laches is a valuable tool for the trial judge in evaluating a petition for coram nobis ... [I]t can prevent the government from being unfairly prejudiced by evidentiary destruction resulting from long, unexcused delay. Unlike waiver, it allows the trial court to consider both the prejudice to the government and the reasons for delay. In balancing the two factors, the trial court has more flexibility to allow writs of coram nobis to proceed in those cases where fairness demands an opportunity to be heard on the matter of post-conviction relief.

*Holmes v. State,* 401 Md. at 484–487, 932 A.2d at 731–733 (Raker, J., dissenting).[1] In a footnote, the Court of Appeals stated in *Fairbanks v. State,* 331 Md. 482, 629 A.2d 63 (1993):

---

1. The majority in *Holmes v. State* addressed the issue of whether a criminal defendant waived his right to petition for writ of error coram nobis by failing to timely appeal his guilty plea, and held that failure to appeal waived any right to petition for writ of error coram nobis. Here, the State argues, in a footnote, that the *Holmes* majority opinion is another reason to affirm the dismissal of appellant's petition, because appellant never appealed his guilty plea and, therefore, waived his right

The writ of error coram nobis, addressed to the court that entered judgment, may be available to the defendant who is no longer in custody. Moreover, a defendant able to mount a collateral challenge may be barred by waiver, see *Curtis v. State,* 284 Md. 132, 395 A.2d 464 (1978), **or might be barred by laches,** see *Oliver v. U.S.,* 961 F.2d 1339, 1342–43 (7th Cir.), *cert. denied,* 506 U.S. 976, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992).

*Id.* at 493, 629 A.2d at 68, n. 3 (1993) (emphasis added); *accord Jones v. State,* 114 Md.App. 471, 476–477, 691 A.2d 229, 231 (1997). The dissent in *Holmes* makes it clear that the doctrine of laches applies to writs of error coram nobis with regard to criminal convictions, and the dicta in *Fairbanks* support the possibility of laches as a defense to coram nobis actions attacking criminal convictions.

▆▆▆ Although Maryland case law on whether the application of laches to petitions for writs of error coram nobis as applied to criminal convictions is not substantial, the case law on the general doctrine of laches is clear. "Generally, ... [laches] must be pled, but it can be invoked by a court on its own initiative." *Liddy v. Lamone,* 398 Md. 233, 242, 919 A.2d

---

to petition for writ of error coram nobis. It is not clear whether *Holmes* should be applied to the instant case.

In *Holmes,* the defendant's grounds for petition for writ of error coram nobis were grounds that were likely known at the time of the guilty plea, and, therefore, could have been timely noted in an appeal before petitioning for a writ. The Court of Appeals in *Holmes* held that the defendant did not "rebut the presumption that he intelligently and knowingly waived his right to file an application for leave to appeal and challenge his conviction." *Holmes v. State,* 401 Md. 429, 448, 932 A.2d 698, 709. In the instant case, the basis appellant raises to challenge his conviction—the effect of a plea on immigration status—was not required as part of the circuit court's plea litany until Rule 4–242(e) came into effect in 1999. Such admonitions were not routinely given to defendants in 1984. Thus, it could be argued the grounds for appeal were not known by appellant at the time of his guilty plea. The *Holmes* holding has produced a tension with the holding in *Skok v. State.* The *Holmes* dissenters argue that, "[i]n effect, the majority overrules *Skok v. State,* 361 Md. 52, 760 A.2d 647 (2000), sub silentio." *Holmes,* 401 Md. at 475, 932 A.2d at 726 (Raker, J., dissenting). Because the application of *Holmes* to this case is debatable, we do not affirm the circuit court's dismissal on this ground.

1276, 1282 (2007). "[T]here is no inflexible rule as to what constitutes, or what does not constitute, laches; hence its existence must be determined by the facts and circumstances of each case." *Liddy*, 398 Md. at 244, 919 A.2d at 1283 (quoting *Ross v. State Board of Elections*, 387 Md. 649, 669, 876 A.2d 692, 704 (2005)). The passage of time alone does not render an action barred by laches. *See Brashears v. Collison*, 207 Md. 339, 115 A.2d 289 (1955). Further, "[i]t is ... well settled that laches 'applies when there is an unreasonable delay in the assertion of one's rights and that delay results in prejudice to the opposing party.'" *Liddy*, 398 Md. at 244, 919 A.2d at 1283 (quoting *Frederick Road Ltd. Partnership v. Brown & Sturm*, 360 Md. 76, 117, 756 A.2d 963, 985 (2000)). "There must have been some lapse of time during which the plaintiff failed to assert his rights, and the lapse must have caused some prejudice to the defendant." *Hungerford v. Hungerford*, 223 Md. 316, 321, 164 A.2d 518, 521 (1960). "Prejudice is 'generally held to be any thing that places [the defendant] in a less favorable position.'" *Liddy*, 398 at 244–245, 919 A.2d at 1284 (alteration in original) (quoting *Ross v. State Board of Elections*, 387 Md. at 670, 876 A.2d at 704).

Courts in other jurisdictions have applied the doctrine of laches to petitions for writs of error coram nobis challenging criminal convictions. Two cases from federal courts of appeal are illustrative of the rationale behind applying the doctrine of laches: *Telink, Inc. v. United States*, 24 F.3d 42 (9th Cir. 1994), and *Oliver v. United States*, 961 F.2d 1339 (7th Cir. 1992), *cert. denied*, 506 U.S. 976, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992). In *Telink v. United States*, the Ninth Circuit held that the district court properly dismissed a petition for writ of error coram nobis action attacking a criminal judgment. The petitioner waited five years after a change in case law to file the petition. The Ninth Circuit upheld the dismissal, stating, "the petition is subject to the equitable doctrine of laches.... Unlike a limitations period, which bars an action strictly by time lapse, laches bars a claim if unreasonable delay causes prejudice to the defendant." *Telink, Inc.*, 24 F.3d at 45 (internal citations omitted). The Ninth Circuit further held

that courts should use a " 'flexible, equitable time limitation' based on laches," *Id.* at 47 (quoting *United States v. Darnell,* 716 F.2d 479, 480 (7th Cir.1983)), and that courts are "free at any time to apply laches to a coram nobis petition, if the petitioner inexcusably delays in asserting his claims and the government is prejudiced by the delay." *Telink,* 24 F.3d at 47.

In *Oliver v. United States,* 961 F.2d 1339 (7th Cir.1992), *cert. denied,* 506 U.S. 976, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992) the Seventh Circuit held that the doctrine of laches applied when the petitioner filed for post-conviction relief seventeen years after he pled guilty, challenging the voluntariness of his plea and claiming ineffective assistance of counsel. Because of the delay in filing the petition, transcripts for the plea and sentencing proceedings were unavailable. Moreover, records of the United States Attorney's office were destroyed after ten years. The Seventh Circuit upheld the trial court's finding that the lack of transcripts and records prejudiced the government, stating "the petitioner's delay must be inexcusable as well as prejudicial to the government," and held that the district court properly found that the petitioner's seventeen year delay "prejudiced the government in its ability to respond to the merits of ... [the petitioner's] allegations because of its destruction of records after ten years and the unavailability of any other means of producing transcripts of the guilty plea and sentencing." *Id.*

Other states have also applied the doctrine of laches to writs of error coram nobis attacking criminal convictions. *See Bartz v. State,* 740 So.2d 1243 (Fla.Dist.Ct.App.1999) (holding that laches applied to motion for writ of error coram nobis filed seventeen years after conviction where transcript was no longer available and, therefore, prejudiced the State); *Gregersen v. State,* 714 So.2d 1195 (Fla.Dis.Ct.App.1998) (holding that laches applied to resident alien's petition for writ of error coram nobis on the grounds of not being informed of consequences to immigration status ten years after the conviction, because the transcript was no longer available and prejudiced the State); *Barker v. State,* 244 Ind. 267, 191 N.E.2d 9 (1963)

(presumption of the doctrine of laches arises in a petition for writ of error coram nobis challenging a criminal conviction); *Janiec v. McCorkle*, .52 N.J.Super. 1, 144 A.2d 561 (1958) (holding that an unreasonable delay permits a court to dismiss petition for writ of error coram nobis at the initial stage in a criminal case).

The application of laches entails a two-prong analysis: 1) there must be an unreasonable delay in a party's assertion of his rights, and 2) the delay must result in prejudice to the opposing party. Appellant waited twenty-three years to file a petition to challenge the validity of his guilty plea and conviction. A delay of this length is unreasonable. By his own admission in his Petition, appellant averred that the changes in federal laws that had the potential to adversely affect his immigration status were in effect in 1993 and 1996. At either of those times, appellant could have filed a petition to challenge his conviction, and the court reporter's notes would have been available to develop a transcript. As to the second prong, appellant's delay extinguished any possibility of obtaining a transcript of the 1984 plea proceedings, because the Petition's filing was well beyond the twelve years that the court reporter's notes must be preserved. This delay rendered the State unable to rebut any of appellant's testimony were he to testify at a merits hearing, and, therefore, prejudiced the State in its ability to defend the validity of the plea. As was the dissenters' concern in *Holmes,* without the application of laches to appellant's Petition, the State would be "unfairly prejudiced by evidentiary destruction resulting from long, unexcused delay." *Holmes v. State, supra,* 401 Md. at 487, 932 A.2d 698.

Accordingly, we affirm the trial court's conclusion that appellant's Petition is barred by the doctrine of laches.

## II.

Appellant argues that he should have been given an opportunity to have a hearing on the merits on his Petition for Writ of Error Coram Nobis, and the circuit court's failure to

hold a merits hearing was error. We do not agree. By agreement of all parties, the hearing was limited to the issue of laches. This was agreed upon by both appellant's counsel and the State. The following exchange took place between counsel and the trial court:

THE COURT: Are you prepared to go forward?

APPELLANT'S COUNSEL: I don't think at this point that we anticipated going forth on the merits today. I was going to answer ... [the State's] Answer, which I consider to be a motion as well, to raise technical issues.

THE COURT: Do you want to hear—do you want to consider the Answer to be a motion, to be heard on those issues? If I decide that the petition should be dismissed because of the laches, then it would be kind of silly to hold a hearing on the merits in this case.

APPELLANT'S COUNSEL: I would agree, your honor.

Appellant contends that a hearing on the merits was to be conducted if it was not barred by laches. The laches hearing was held on June 25, 2007, the circuit court took the matter under advisement, and the court entered its memorandum opinion and order dismissing the Petition on September 20, 2007. As is clearly indicated in the hearing transcript, appellant himself agreed that there was no need for a hearing on the merits if the issue was barred by laches. *See Watkins v. State*, 328 Md. 95, 99–100, 613 A.2d 379, 381 (1992) (party's consent to ruling waives appellate review of the ruling). For the circuit court to hold a hearing on the merits of appellant's Petition before the court made a decision on the issue of laches would be against the principles of promoting judicial economy. Holding a merits hearing on a petition barred by laches is simply a waste of judicial resources.

A petition for writ of error coram nobis does not automatically trigger a hearing, as appellant contends. Maryland Rule 15–1206(a), which was in effect at the time appellant's Petition was filed, dictates the manner in which hearings are to be held on these petitions:

(a) Generally. The court, **in its discretion,** may hold a hearing on the petition. The court may deny the petition without a hearing but may grant the petition only if a hearing is held. The court may permit evidence to be presented by affidavit, deposition, oral testimony, or any other manner that the court finds convenient and just. In the interest of justice, the court may decline to require strict application of the Rules in Title 5, except those relating to competency of witnesses.

Md. Rule 15–1206 (emphasis added). There is no doubt that the trial court had the discretion to decide whether to hold a hearing on the merits of the petition. The circuit court is required to hold a hearing if it grants a petition, which was not the case here. Rule 15–1206 gives the court the full authority to dismiss the petition without a hearing, and the circuit court did not err in dismissing appellant's petition without a hearing.

Appellant again relies on *Skok v. State, supra,* 361 Md. 52, 760 A.2d 647, to support his contention that he was entitled to a hearing on the merits. Because the Court of Appeals in *Skok* remanded for a hearing on the criminal defendant's petition for writ of error coram nobis, appellant argues that he is entitled to a hearing. The Court of Appeals' action in *Skok* does not vitiate the clear language of Md. Rule 15–1201 *et seq.,* which became effective in 2006, six years after *Skok* was decided. Maryland Rule 15–1206, along with the record of the hearing on the Petition's timeliness, make it plain that appellant was not guaranteed a hearing on the merits.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**