72 A.3d 579

Jose F. LOPEZ

v.

STATE of Maryland.

No. 61, Sept. Term, 2012.

Court of Appeals of Maryland.

Aug. 20, 2013.

Jeffrey M. Ross, Assistant Public Defender (Paul B. De-Wolfe, Public Defender, Baltimore, MD), for Petitioner/Cross–Respondent.

Mary Ann Ince, Asst. Atty. Gen. (Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), for Respondent/Cross–Petitioner.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, and BELL,* JJ.

McDONALD, J.

The equitable doctrine of laches bars litigation of a claim when there is unreasonable delay in its assertion and the delay results in prejudice to the opposing party.[1] Laches derives from concerns similar to those that undergird statutes of limitations. Both devices—one a product of legislation, the other a development of the common law—are intended to set time limits on the assertion of claims. While their origin and operation as originally conceived were distinct, in modern times their operation has converged.[2] This case concerns a

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. See Liddy v. Lamone, 398 Md. 233, 243–45, 919 A.2d 1276 (2007).

2. See Heriot, A Study in the Choice of Form: Statutes of Limitation and the Doctrine of Laches, 1992 BYU L.Rev. 917 (1992). A statute of limitations may be straightforward to apply but "[l]ike all rules, it is both over inclusive and under inclusive.... On the other hand, ... laches ... relies so heavily upon the wisdom and good faith of the trial judge. When judicial wisdom and good faith fail us, as they sometimes

convergence of the two in the context of a post-conviction proceeding.

Prior to 1995, the statute governing post-conviction proceedings allowed for the filing of a petition "at any time." That year, the General Assembly amended the statute to create a 10–year limitations period for post-conviction petitions. *See* Maryland Code, Criminal Procedure Article ("CP"), § 7–103(b). In *State v. Williamson,* 408 Md. 269, 277, 969 A.2d 300, 305 (2009), this Court concluded that the 10–year limitations period did not apply to an individual sentenced before the effective date of the statute—October 1, 1995. The Court declined to consider whether such an individual could be barred from pursuing post-conviction remedies under the equitable doctrine of laches because the issue had not been preserved in that case. 408 Md. at 273 n. 4, 969 A.2d 300. That issue is now properly before the Court. In light of the language of the pre–1995 statute, its legislative history, and its contemporaneous construction by the Court of Special Appeals, we conclude that laches does not apply.

### Background

On February 24, 1986, a jury in Montgomery County convicted Petitioner Jose F. Lopez of attempted first degree rape, attempted robbery with a dangerous and deadly weapon, and burglary. On March 3, 1986, Mr. Lopez pled guilty to two counts of first degree rape, one count of second degree rape, three counts of burglary, and one count of assault with intent to rape. The offenses arose out of series of burglaries and rapes in the Silver Spring area during 1985 and 1986 involving five different victims, three of whom were elderly women. Mr. Lopez was sentenced to consecutive life sentences for two

do, highly discretionary doctrines like laches fail us too." *Id.* at 919–20. Since the 19th century, the laches doctrine has become more "rule-like" while statutes of limitations have been qualified by concepts such as the "discovery rule" that customize the rule to the circumstances of a particular case. *Id.* at 952–62.

of the offenses and concurrent sentences on the other charges.[3]

On October 3, 2005, Mr. Lopez, unrepresented by counsel, filed a post-conviction petition covering both cases.[4] In that petition, and an amended version of it filed six months later, he alleged, among other things, ineffective assistance of counsel. The State responded to both the initial petition and its amendment, arguing that his claims were without merit and that, in any event, he had waived the right to raise them. In late 2007, Mr. Lopez came to be represented by the Office of the Public Defender, which filed a supplement to his petition. On November 25, 2008, the State filed an answer in which it expanded upon its prior arguments and, for the first time, argued that Mr. Lopez's petition should be denied on the ground of laches.

On December 11, 2008, a hearing was held before the Circuit Court for Montgomery County. The Circuit Court held that laches was available to the State as a defense to a post-conviction petition, and it denied the petition on that basis.

Mr. Lopez appealed that decision to the Court of Special Appeals. The intermediate appellate court agreed with the Circuit Court that laches was applicable in post-conviction proceedings. Nonetheless, the Court of Special Appeals found that the record was insufficiently developed for a finding that laches barred the petition in this case. It therefore vacated the judgment and remanded the matter to the Circuit Court for reconsideration. This Court granted certiorari to review the judgment of the Court of Special Appeals.

---

3. A more complete history of this case can be found in the opinion of the Court of Special Appeals. *Lopez v. State,* 205 Md.App. 141, 43 A.3d 1125 (2012).

4. Mr. Lopez had filed a petition for post-conviction relief in both cases in 1997, but he withdrew it in 1998.

■■■■■■■

### Discussion

■ Whether laches is an affirmative defense to a post-conviction petition is a question of law. Accordingly, we consider that question without according special deference to the holding of the Circuit Court. *State v. Adams,* 406 Md. 240, 255, 958 A.2d 295 (2008).[5]

*Post–Conviction Procedure Act*

The Maryland Uniform Post–Conviction Procedure Act is codified at CP § 7–101 *et seq.*[6] In its current form, the Act contains a statute of limitations that provides that, in most cases, a post-conviction petition "may not be filed more than 10 years after the sentence was imposed." CP § 7–103(b)(1). There is no dispute, however, that the 10–year period of limitations does not apply to Mr. Lopez's petition. To understand why, and to assess whether laches may apply instead, requires an excursion into the history of the statute.

*1958 Post–Conviction Procedure Act—"at any time"*

In 1958, the General Assembly adopted the 1955 version of the Uniform Post–Conviction Procedure Act. Chapter 44, Laws of Maryland 1958, *then codified at* Maryland Code, Article 27, § 645A. The purpose of the Act was to consolidate various post-conviction remedies in a single statute; it was a procedural, not a substantive, reform. *State v. D'Onofrio,* 221 Md. 20, 29, 155 A.2d 643 (1959). The model act provided that a petition for relief under the act "may be filed at any time"— language that was included in the Maryland statute. *Compare* Uniform Post–Conviction Procedure Act (1955) § 1, 9B Uniform Laws Annotated (1957), *with* Article 27, § 645A(b)

---

**5.** The parties also briefed the questions whether, assuming laches is available as a defense in a post-conviction proceeding, it should be applied on the facts of this case and whether the Court of Special Appeals was correct in remanding the case to the Circuit Court for further development of the record on that issue. Because we hold that laches is not an available defense, we do not reach those issues.

**6.** Rules governing post-conviction proceedings are found in Maryland Rules 4–401 *et seq.*

(1957, 1959 Supp.).[7]  Commentary to the model act indicated that the absence of a time limit for filing was deliberate and that there was to be no period of limitations for filing a petition.[8]

A number of other jurisdictions have enacted statutes that allow for filing post-conviction petitions "at any time."  Courts in several states have held that the absence of a period of limitations, coupled with that language, precludes the assertion of laches as a defense to a post-conviction petition.[9]

---

7.  Subsequent revisions of the model act have retained that language. *See* Uniform Post–Conviction Procedure Act (1966) § 3; Uniform Post–Conviction Procedure Act (1980) § 3(b); 11 Uniform Laws Annotated (2003) at 206, 756.

8.  The drafters of the model act wrote:
    Consideration was given to placing a time limitation on the filing of the petition, i.e., to insert a statute of limitations.  The decision was that this would be unwise and that any limitation of this sort might raise a question as to the constitutionality of the act.
    Uniform Post–Conviction Procedure Act (1955), § 1, Commissioners' Note, 9B Uniform Laws Annotated (1957) at p. 354.  The commentary noted that similar language appeared in the federal post-conviction statute—28 U.S.C. § 2255.  (In 1996, Congress added a one-year statute of limitations to the federal statute.  *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132 (April 24, 1996), § 105.)
    Similar commentary appears in the subsequent revisions of the model act, although the commentary to the most recent (1980) revision cites compliance with American Bar Association ("ABA") standards rather than the Constitution as the basis of the belief that a period of limitations was inappropriate.  *See* 11 Uniform Laws Annotated (2003) at 207.  Notably, the referenced ABA standard explicitly provided for denying relief to a petitioner who "deliberately or inexcusably" withheld a claim until occurrence of an event that would prevent successful prosecution on the basis of "abuse of process," which the commentary analogized to the equitable doctrine of laches.  *See* American Bar Association, Standards for Criminal Justice, Chapter 22—Postconviction Remedies (1978), Standard 22–2.4 & Commentary.  This appears consistent with a federal trend that arose at that time to restrict the filing of post-conviction petitions.  *See* Millemann, *Collateral Remedies in Criminal Cases in Maryland: An Assessment,* 64 Md. L.Rev. 968 (2005).

9.  *Commonwealth v. Weddington,* 514 Pa. 46, 522 A.2d 1050, 1051 (1987); *Prater v. Commonwealth,* 474 S.W.2d 383, 384 (Ky.Ct.App. 1971); *In re McNair,* 189 Mont. 321, 615 P.2d 916, 917 (1980); *In re Stewart,* 140 Vt. 351, 438 A.2d 1106, 1110 (1981); *see also Turner v. Maass,* 113 Or.App. 70, 831 P.2d 703, 704 (1992) (laches not available

Courts in a couple states have construed that language to allow for a defense of laches.[10]

In Maryland, for many years, no appellate decision addressed the question whether the statute's authorization to file a petition "at any time" precluded a laches defense. The general understanding apparently was that laches was not available. In particular, during the 1980s, the Maryland Judicial Conference proposed a number of amendments to the Post–Conviction Procedure Act to correct perceived deficiencies in the statute. Among those proposals was an amendment that would have allowed dismissal of a petition on the basis of laches. *See* Statutory Text Proposed by Criminal Law and Procedure Committee of the Maryland Judicial Conference, Recommendation 6, *reprinted in* Tomlinson, *Post–Conviction in Maryland: Past, Present, and Future*, 45 Md. L.Rev. 927 (1986), Appendix A.[11] That amendment was not adopted by the Legislature. The issue was soon addressed, however, by an appellate court—a decision that sparked a legislative response.

*1991—Creighton v. State—laches does not apply to petitions under the Act*

In 1991, the Court of Special Appeals had occasion to construe the significance of "at any time" in relation to the doctrine of laches. In *Creighton v. State*, 87 Md.App. 736, 591 A.2d 561 (1991) (Wilner, C.J.), an inmate serving a life sen-

---

when post-conviction statute provided that a petition could be filed "without limit in time"); *Wills v. State*, 859 S.W.2d 308, 310 (Tenn. 1993) (rejecting application of laches to post-conviction petition).

**10.** *Raso v. Wall*, 884 A.2d 391, 395 (R.I.2005) (construing "at any time" to mean "at any reasonable time"); *Johnson v. State*, 714 N.W.2d 832, 837 (N.D.2006) (following *Raso* ).

**11.** The Judicial Conference proposed the following amendment:

*Delayed petitions.* A petition may be dismissed if it appears that the state has been prejudiced in its ability to respond to the petition or to retry the petitioner by delay in its filing unless the petitioner shows that it is based on allegations that he could not have had knowledge of by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

tence for murder filed a post-conviction petition 26 years after his trial alleging ineffective assistance of counsel and various trial errors. The Circuit Court denied relief in part because of the long delay. On appeal, the Court of Special Appeals opined that there was an element of fairness in such a ruling, but held that the Post–Conviction Procedure Act did not permit it. 87 Md.App. at 744, 591 A.2d 561. The court noted that, while the statute expressly limited the filing of petitions in some respects, it stated explicitly that "[a] petition for relief under this subtitle *may be filed at any time.*" (emphasis added). In accordance with the longstanding approach to statutory construction,[12] the court looked to the plain meaning of that language.[13] The court observed that this language "would seem to negate any notion of claim preclusion—a disentitlement from proceeding at all under the Act because of delay. [Other provisions of the Act now codified in CP § 7–106] focus more on the question of issue preclusion, to which laches is particularly relevant, and seem to negate that as well." *Id.* at 746, 591 A.2d 561.[14] The Court contrasted the General Assembly's failure to express an intent to limit post-conviction actions on timeliness grounds with the express authority provided by Congress in the rules governing proceedings under 28 U.S.C. § 2254,[15] which allowed courts to

---

12. *See, e.g., Barbre v. Pope,* 402 Md. 157, 172–73, 935 A.2d 699 (2007).

13. More recently, this Court has had occasion to construe the same language in a related context. In *Greco v. State,* 427 Md. 477, 503, 48 A.3d 816 (2012), the State argued that the defendant had waited too long to file a motion to correct an illegal sentence pursuant to Maryland Rule 4–345(a). Characterizing that position as "essentially a laches argument," this Court held that such a defense was not available in light of the provision of the rule that allowed a court to correct an illegal sentence "at any time."

14. In the case before it, the Court of Special Appeals denied relief because a trial transcript would have been required to assess the merits of the alleged errors and the inmate petitioner was unable to carry the burden of proving that someone other than himself was responsible for the failure to obtain a transcript.

15. That rule provided that:
A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond

dismiss post-conviction petitions on a laches-type basis. *Id.*[16]

*1995 amendment—adding a prospective 10–year limitations provision*

In 1995, the General Assembly overrode the holding in *Creighton* by deleting the provision that an application for post-conviction relief could be filed "at any time" and establishing a 10–year period of limitations. Chapter 258, Laws of Maryland 1995, *now codified at* CP § 7–103(b). When the bill was introduced in the Legislature, the General Assembly was advised that, while certain other states applied the doctrine of laches in post-conviction proceedings, Maryland did not. Bill Analysis for House Bill 409 (1995) (citing the *Creighton* decision). Indeed, it appears that the holding of the *Creighton* decision on laches was the impetus for the amendment. *See* Memorandum of Robert L. Dean on behalf of the Maryland State's Attorneys Association to Members of the House Judiciary Committee concerning House Bill 407 (March 7, 1995) (quoting *Creighton* and recommending adoption of limitations provision for post-conviction petitions).

---

to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

Rules Governing § 2254 Cases, Rule 9(a) (1991). A similar provision was later added to the Maryland Rules governing habeas corpus petitions. *See* Maryland Rule 15–303(e)(3)(D).

**16.** It is true, as the State notes, that two years later this Court stated briefly in dicta that a collateral attack on a conviction "might be barred by laches," without any reference to the *Creighton* decision. *Fairbanks v. State*, 331 Md. 482, 492 n. 3, 629 A.2d 63 (1993). That case involved a sentencing proceeding with enhanced penalties for repeat offenders. The Court held that a defendant could not mount a collateral attack on a predicate conviction in the sentencing proceeding and, in a brief discourse on the available remedies to collaterally challenge a conviction, cautioned in a footnote that those remedies were subject to various qualifications including possibly the defense of laches. In its brief reference to laches, the Court cited only a federal decision involving a federal statute, seemingly unaware that the Court of Special Appeals had given extended consideration to the application of laches in the context of the Maryland statute in *Creighton*.

The 1995 legislation that enacted the 10–year limitations period, however, provided that the time limit would apply only prospectively to proceedings concerning sentences imposed after the effective date of the statute—October 1, 1995. Chapter 258, §§ 2–3, Laws of Maryland 1995.[17] Thus, the Legislature apparently acquiesced in the understanding that there was no time limit on the filing of post-conviction petitions by inmates sentenced before the effective date of the bill. Not only did it state that the amendment would operate prospectively—a common presumption for legislation [18]—but it also explicitly stated that the legislation "may not be . . . interpreted to have any effect on" petitions filed with respect to sentences imposed before October 1, 1995.

*Summary*

When the General Assembly intends a statute to have a retrospective application, it generally makes that intention explicit. *See, e.g., Evans v. McCoy,* 291 Md. 562, 436 A.2d 436 (1981) (statute creating presumption of meaning of "child" made expressly applicable to instruments executed before statute effective). Had the Legislature intended its action to have retrospective effect—*e.g.,* to reverse the holding of *Creighton* for earlier petitions—it surely would not have expressly stated otherwise, nor would it have done so in such an absolute and all-encompassing manner.[19] There thus appears

---

17. The relevant portion of the legislation read:
   SECTION 2. AND BE IT FURTHER ENACTED, That this Act shall be construed prospectively to apply only to postconviction proceedings for sentences imposed on or after the effective date of this Act and may not be applied or interpreted to have any effect on or application to postconviction petitions for sentences imposed before the effective date of this Act.
   SECTION 3. AND BE IT FURTHER ENACTED, That this Act shall take effect October 1, 1995.
   Chapter 258, §§ 2–3, Laws of Maryland 1995.

18. *See State Ethics Commission v. Evans,* 382 Md. 370, 381, 855 A.2d 364 (2004).

19. We thus disagree with the conclusion of the Court of Special Appeals that the 1995 legislation was intended to have a retrospective effect. *See* 205 Md.App. at 171, 43 A.3d 1125.

to be no basis in the Post–Conviction Procedure Act for applying laches to a petition relating to a sentence imposed before October 1, 1995.

*Significance of Maryland Rule 2–323(g)*

The State argues that, given that post-conviction proceedings are civil in nature, Maryland Rule 2–323(g) establishes laches as a defense in post-conviction actions. That rule reads, in pertinent part:

> Affirmative Defenses. Whether proceeding under section (c) or section (d) of this Rule, a party shall set forth by separate defenses: (1) accord and satisfaction, (2) merger of a claim by arbitration into an award, (3) assumption of risk, (4) collateral estoppel as a defense to a claim, (5) contributory negligence, (6) duress, (7) estoppel, (8) fraud, (9) illegality, (10) *laches,* (11) payment, (12) release, (13) res judicata, (14) statute of frauds, (15) statute of limitations, (16) ultra vires, (17) usury, (18) waiver, (19) privilege, and (20) total or partial charitable immunity.

(emphasis added).

The State's argument essentially is that, because laches is listed as a defense that must be pled separately, it is a defense that must necessarily apply. But Rule 2–323(g) is a procedural rule intended to establish the format for asserting affirmative defenses and thereby "secure simplicity in procedure." [20] It has nothing to say about the availability of any particular defense in a particular type of case. Many, if not most, of the defenses listed obviously do not pertain to post-conviction proceedings (*e.g.,* contributory negligence, statute of frauds) and, accordingly, the inclusion of a particular defense in the list says nothing one way or the other about whether it is available in a post-conviction proceeding.

## Conclusion

For the reasons set forth above, Mr. Lopez is not barred from litigating his post-conviction petition simply by the pas-

---

**20.** Maryland Rule 1–201(a).

sage of time. While he will have an opportunity to pursue his claims, he still bears the burden of proving that he is entitled to relief in any further proceedings on remand.[21] The delay in asserting these claims may be taken into account in assessing the State's contention, consistently asserted in response to the various iterations of his petition, that he has waived those claims. *See State v. Adams,* 406 Md. 240, 283–84, 958 A.2d 295 (2008); CP § 7–106(b).

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT AND REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.

HARRELL and BATTAGLIA, JJ., dissent.

HARRELL, J., dissenting, joined by BATTAGLIA, J.

I dissent respectfully. I would affirm the Court of Special Appeals's holding that the doctrine of laches may apply to bar petitions for postconviction relief filed after an unreasonable delay that results in prejudice to the State's ability to mount a new prosecution. *See Liddy v. Lamone,* 398 Md. 233, 244, 919 A.2d 1276 (2007) (quoting *Frederick Road Ltd. v. Brown & Sturm,* 360 Md. 76, 117, 756 A.2d 963 (2000)). I would remand the present case to the postconviction court for an evidentiary hearing to determine whether the two-prong test for laches is satisfied here.

The Majority Opinion places heavy emphasis on its view of the legislative intent behind the 1995 amendment to the Maryland Uniform Post–Conviction Procedure Act, now codi-

---

21. We note that the allegations of the petition concerning ineffective assistance of counsel relate in part to the performance of Paul B. DeWolfe, who is now Public Defender. As a result of this decision there will be further proceedings in the Circuit Court. The Office of the Public Defender has indicated that it will obtain other counsel for Mr. Lopez to avoid a conflict, or the appearance of a conflict, in those proceedings.

fied at Maryland Code, Criminal Procedure Article ("CP"), § 7–101 *et seq.* In a memorandum addressed to the House Judiciary Committee, Robert L. Dean, the then Senior Assistant State's Attorney for Montgomery County, urged legislators to consider the Court of Special Appeals's holding in *Creighton v. State,* 87 Md.App. 736, 591 A.2d 561 (1991), that laches was unavailable as a bar to postconviction proceedings in Maryland under the UPPA as codified in 1995. *See* Memorandum of Robert L. Dean on behalf of the Maryland State's Attorney's Association to Members of the House Judiciary Committee concerning House Bill 407 (March 7, 1995).[1] Although the Majority may be correct in its assertion that *Creighton* "was the impetus for the amendment" in 1995, *see* Majority op. at 660, 72 A.3d at 584, we must remember also the principle that "[s]tatutes in derogation of the common law are strictly construed, and it is not to be presumed that the legislature by creating statutory assaults intended to make any alteration in the common law other than what has been specified and plainly pronounced." *Robinson v. State,* 353 Md. 683, 707, 728 A.2d 698, 709 (1999) (quoting *Gleaton v. State,* 235 Md. 271, 277, 201 A.2d 353, 356 (1964)). Because this Court held, in *Fairbanks v. State,* 331 Md. 482, 492 n. 3, 629 A.2d 63 (1993), that laches may be a bar to challenging collaterally a defendant's conviction, I believe the 1995 amendments to the UPPA do not preclude the State from raising the doctrine of laches as a bar to a petition for post-conviction relief. *See Robbins v. People,* 107 P.3d 384 (Colo.2005) (concluding that Colorado's statutory provision allowing post-conviction petitions "at any time" did not abrogate the common law doctrine of laches). In *Robbins, id.* at 389, the Colorado Supreme Court stated:

> It is clear that before the enactment of section 16–5–402, Colorado courts had the power to apply laches as a bar to postconviction relief. In interpreting statutes, the court

---

1. The Senate Judicial Proceedings Committee advised the Legislature that laches was available as a bar to post-conviction relief in other states, but that the Court of Special Appeals's decision in *Creighton* held laches did not apply to post-conviction relief in Maryland. Bill Analysis for House Bill 409 (1995).

presumes the legislation was passed with deliberate and full knowledge of all existing law dealing with the same subject. *In re Questions Submitted by U.S. Dist. Court,* 179 Colo. 270, 275, 499 P.2d 1169, 1171 (1972). We therefore presume the general assembly was aware that laches worked as a time bar against criminal postconviction challenges to any conviction. Thus, we must consider whether the legislature abrogated that doctrine by imposing no time limit on challenges to first degree murder convictions.

Although the Maryland statute in effect at the time of Lopez's convictions in the present case allowed petitions to be filed "at any time," there had been no case decided by this Court that held laches inapplicable to petitions for post-conviction relief at that time. *Creighton* was decided much later and, because the 1995 amendments to UPPA were intended expressly to apply only "prospectively . . . to post-conviction proceedings for sentences imposed on or after [October 1, 1995] . . . [and] not [to] be applied or interpreted to have any effect on or application to post-conviction petitions for sentences imposed before" that date, Chapter 258, §§ 2–3, Laws of Maryland 1995, we should not attribute the impetus for the amendments as pre-existing *Creighton.* The Majority Opinion errs when it emphasizes that "the Legislature apparently acquiesced in the understanding that there was no time limit on the filing of post-conviction petitions by inmates sentenced before" October 1, 1995. Majority op. at 661, 72 A.3d at 584. The references to *Creighton* in the Bill Analysis and in Robert Dean's Memorandum persuade me that the Legislature, in enacting the 1995 amendments to the UPPA, was directing the time limitation for filing petitions for post-conviction relief only towards what seemed an inequitable holding by the Court of Special Appeals in *Creighton.* It is my view that, before *Creighton,* it is just as reasonable to assume laches was available as it was to assume that the "at any time" provision in the then-enacted version of the UPPA precluded the doctrine's applicability. Other states have held that laches applies to post-conviction petitions, sharing similar reasoning. *See, e.g., Raso v. Wall,* 884 A.2d 391, 394 (R.I.

2005) (holding that laches "may, in appropriate circumstances, be properly invoked by the state as an affirmative defense to an applicant's application for postconviction relief" where applicable statute permitted petitions filed "at any time"); *see also People v. Valdez*, 178 P.3d 1269 (Colo.Ct.App.2007) (finding laches to be a bar to postconviction petitions not prosecuted within a reasonable time of being filed).

Though I disagree with the Majority Opinion on whether laches applies at present, I would remand the case to the Circuit Court to hold an evidentiary hearing to determine whether the 2–prong test of laches is met in this case. The State must prove that "there [was] an unnecessary delay in the assertion of [Lopez's] rights and that the delay results in prejudice" to the State. *See Liddy*, 398 Md. at 244, 919 A.2d 1276. Here, because the postconviction court declined to hear testimony from Lopez regarding the reasons for his delay in filing, the record before us is insufficient to determine that the delay was "unreasonable." Additionally, although presumptively the victims in the rape and burglary cases may be unavailable to testify because of infirmity (or failed to survive beyond their golden years), the State must present evidence that such is the case to meet its burden.

Judge BATTAGLIA authorizes me to state that she shares the views expressed in this dissent and joins it.