REPORTED

IN THE COURT OF SPECIAL APPEALS


No. 2425

September Term, 2012


STATE OF MARYLAND

v.

COREY JONES


Krauser, C.J.,
Hotten,
Berger,

JJ.


Opinion by Krauser, C.J.


Filed: November 25, 2014

In 1999, appellant, Corey Jones, pleaded guilty, in the Circuit Court for Baltimore City, to using a minor to distribute heroin, in violation of former Article 27, § 286C.[1] He was thereafter sentenced to a term of six years' imprisonment. All but eighteen months of his six-year sentence were then suspended, to be followed by three years of probation. But, while serving his three-year period of probation, Jones violated its terms on multiple occasions and, as a consequence, in 2005, was ordered to serve three years of his suspended sentence.

After finally completing his 1999 Maryland sentence, which, ultimately amounted to nine years of either incarceration or probation, Jones, in 2011, was charged, in the United States District Court for the District of Maryland, with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g). Upon pleading guilty to that charge, Jones faced a mandatory minimum sentence of fifteen years' imprisonment, under the Armed Career

---

[1] At the time of the offense, Maryland Code (1957, 1996 Repl. Vol.), § 286C of Article 27 provided:

> (a) *Prohibited acts.* — A person may not hire, solicit, engage, or use a minor, in any manner, for the purpose of manufacturing, distributing, or delivering, on behalf of that person, any controlled dangerous substance in sufficient quantity to reasonably indicate under all the circumstances an intent to distribute, unless the manufacturing, delivery, or distribution has a lawful purpose.

> (b) *Penalty.* — Any person who violates this section is guilty of a felony and, upon conviction, shall be sentenced to imprisonment for up to 20 years, or fined up to $20,000, or both.

Thereafter, that statute was re-codified, without substantive change, at Maryland Code (2002, 2012 Repl. Vol.), § 5-628(a)(1) and (b) of the Criminal Law Article.

1

Criminal Act, 18 U.S.C. § 924(e),[2] which provides that an enhanced sentence be imposed upon a defendant convicted of illegal possession of a firearm, in violation of 18 U.S.C. § 922(g), where that defendant has three prior convictions "for a violent felony or serious drug offense, or both, and committed on occasions different from one another." *See* 18 U.S.C. § 924(e)(1).

One of Jones's "three previous convictions" was his 1999 Maryland conviction for using a minor to distribute heroin. Without that conviction, Jones would not have faced sentencing under the federal enhancement statute, that is, 18 U.S.C. § 924(e). Instead, he would have been subject to only an unenhanced sentence of, at most, ten years, under

---

[2] 18 U.S.C. § 924(e), commonly known as the Armed Career Criminal Act, *see*, *e.g.*, *Descamps v. United States*, 570 U.S. __, 133 S. Ct. 2276, 2281 (2013), provides, among other things, that "a person who violates section 922(g) . . . and has three previous convictions by any court referred to in section 922(g)(1) . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another," "shall be fined under this title and imprisoned not less than fifteen years," and, "notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g)." 18 U.S.C. § 924(e)(1). A "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § (e)(2)(A)(ii).

It is undisputed that a prior conviction under Maryland Code, Art. 27, § 286C, qualifies as a predicate conviction for "a serious drug offense" under the Armed Career Criminal Act. *See United States v. Williams*, 508 F.3d 724, 728 (4th Cir. 2007) ("A prior [drug-related] conviction therefore qualifies as a 'serious drug offense' if the statute of conviction permits the imposition of a sentence of ten years or more.").

18 U.S.C. § 924(a)(2), and, notably, if the Federal Sentencing Guidelines were applied to the unenhanced sentence, he would have faced a further substantial reduction in his sentence.

While awaiting sentencing by the federal district court, Jones filed a petition for a writ of error coram nobis on October 9, 2012, in the Baltimore City circuit court, requesting that his drug conviction be vacated because his 1999 Maryland guilty plea to using a minor to distribute heroin was not, he claimed, knowingly and voluntarily made. The State responded, not only was the guilty plea valid, but, in any event, laches barred the coram nobis relief Jones was requesting because Jones had unreasonably delayed in seeking that relief and that that delay had prejudiced the State. The circuit court ultimately granted Jones's coram nobis petition and vacated his conviction, whereupon, the State noted this appeal, reiterating the claims it had made before the circuit court. Because we hold that Jones's coram nobis petition was indeed barred by laches, we reverse.

**I.**

In April of 1999, Jones was charged with several drug-related offenses, including using a minor to distribute heroin and possession of heroin with intent to distribute. On September 14, 1999, five months after his arrest, Jones appeared in the Baltimore City circuit court to enter a guilty plea.

At that time, the State informed the circuit court that Jones and a "Charles Turner," a defendant in a separate and unrelated case, would respectively be entering a guilty plea and that Jones's counsel would be "standing in" for Turner's counsel during the entry of Turner's

3

plea. The State further advised the court that, as to Jones, "[it] would be proceeding under Count II of the case," that is, unlawful use of a minor to distribute heroin. Notwithstanding this representation by the State, Jones's counsel subsequently informed both Jones and Turner, on the record, "you're each pleading guilty to a count of possession with intent to distribute."[3] The circuit court ultimately accepted Jones's guilty plea and sentenced him to a term of six years' imprisonment, all but eighteen months of which were then suspended, and three years of probation was to follow upon his release from imprisonment.[4]

Jones thereafter failed to challenge his guilty plea, either by filing an application for leave to appeal within thirty days after sentencing or by filing a post-conviction petition while he was serving his sentence,[5] a sentence which did not expire until nine years later in 2008. During that nine-year period of time, he was either incarcerated or on probation and could have lawfully challenged his 1999 Maryland conviction via a post-conviction petition.

In 2012, Jones entered a plea of guilty, in the United States District Court for the District of Maryland, to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g).

---

[3] According to Maryland Case Search, Turner had been charged with possession of a controlled dangerous substance with intent to distribute, possession of a controlled dangerous substance, and three counts of conspiracy. On the same day and in the same court as Jones, Turner pleaded guilty just to possession of a controlled dangerous substance with intent to distribute, and the other charges were dismissed. *See* Md. Rule 5-201.

[4] Jones was also ordered to pay "costs" of $200 and a "fee" of $150 to the Public Defender.

[5] *See* Md. Code (2001, 2008 Repl. Vol.), §§ 7-101 through 7-301 of the Criminal Procedure Article.

Because of his three prior convictions,[6] one of which was his 1999 Maryland state drug conviction, Jones was subject, under the Armed Career Criminal Act, 18 U.S.C. § 924(e), to an enhanced sentence of at least fifteen years. He would have otherwise faced only a maximum of ten years' imprisonment, under 18 U.S.C. § 924(a)(2), and a little more than half of that sentence under the Federal Sentencing Guidelines, *see* U.S.S.G. § 2K2.1(a)(2); U.S.S.G. § 4A1.1; U.S.S.G., ch. 5, Sentencing Table.

Immediately following his guilty plea in federal district court, Jones, despite facing a sentence enhancement as a collateral consequence of his 1999 Maryland drug conviction, was not eligible for coram nobis relief, under extant Maryland law, as he had not previously filed an application for leave to appeal his guilty plea and, therefore, would be presumed to have waived his right to such relief. *See Holmes v. State*, 401 Md. 429, 445–46 (2007).[7] But, while he was awaiting sentencing on that federal charge, the Maryland General Assembly enacted Maryland Code (2001, 2008 Repl. Vol., 2013 Supp.), § 8-401 of the Criminal

[6]The record does not indicate what other prior convictions led to Jones's designation as an "Armed Career Criminal." However, at the time he entered the guilty plea that is the subject of the instant appeal, the circuit court noted that Jones had a prior conviction for "robbery deadly" and "a separate handgun violation."

[7]In *Holmes v. State*, 401 Md. 429 (2007), the Court of Appeals held that, if a person pleads guilty and is properly advised that he has the right to file application for leave to appeal within thirty days after sentencing but thereafter fails to file such an application, "a rebuttable presumption arises that he has waived the right to challenge his conviction in a subsequent coram nobis proceeding." *Id.* at 446. Although, under such circumstances, a person was not barred from seeking coram nobis relief, he was, as a practical matter, almost assured of failure. *See id.* at 475 (Raker, J., dissenting) ("If a person must first file an application for leave to appeal or a petition for post-conviction relief, will a writ of error coram nobis ever be appropriate?").

Procedure Article ("CP"), which provides that "[t]he failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error coram nobis." Thus, Jones, under this new enactment, could now seek coram nobis relief.

Thirteen years after pleading guilty to the Maryland drug charge, but only days after the passage of CP § 8-401, enabling Jones to seek coram nobis relief, Jones, on October 9, 2012, filed a petition for a writ of error coram nobis, alleging that, because he "was never informed of the elements of the offense" to which he had pleaded guilty and because "it [was] impossible to determine the crime to which [he had] actually pleaded guilty," his plea was not knowingly and voluntarily made. Thus, its acceptance by the circuit court was in violation of the United State Constitution and Maryland Rule 4-242(c).[8] With his petition, Jones filed a copy of the transcript of his 1999 guilty plea hearing.

In its opposition to Jones's petition, the State re-asserted that Jones's guilty plea was valid and that his petition was, in any event, barred by laches. The State then turned to the

---

[8]At the time of Jones's guilty plea, Maryland Rule 4-242(c) provided, in part:

> The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea.

The rule has subsequently been amended several times, but, as to the quoted language, the present rule is substantially the same. The principal difference between the two versions is that the current rule now requires that the court "announce[] on the record" its determination that the plea is made voluntarily and knowingly and that there is a factual basis for the plea.

transcript provided by Jones. It was "obviously" not complete, the State pointed out, as the "record indicates and common sense suggests that there were previous discussions during which the plea was negotiated." It is "quite possible," the State continued, that this part of the proceeding would show that [Jones] understood the nature of the charges to which he was pleading guilty." Moreover, if the court granted Jones's petition, it would be, the State observed, "irreparably hampered in its ability to prosecute" him, given that the "drugs seized in the case [were] no longer available" and witnesses were either not reachable or could not recall the incident.

At the hearing on Jones's coram nobis petition, former Baltimore City police officer, Shawn Johnson, who had observed the drug transaction that underlay Jones's plea of guilty in 1999, testified that he had taken part in "[h]undreds, if not thousands" of drug investigations between 1997 and 2000; that he could not specifically recall Jones or his case; that a review of the "offense report" and statement of charges, which he had prepared for Jones's case was of little assistance; and that he "was unable to locate the case folder for this particular incident."

The circuit court nonetheless held that laches did not apply because Jones had not unreasonably delayed filing his petition. But, in so ruling, the court focused only on the 2012 enactment of CP § 8-401, which removed the procedural hurdle that a coram nobis petition be preceded by an application for leave to appeal and disregarded his failure, during the nine years his sentence was in effect, to seek post-conviction relief. Then finding that Jones's

7

plea had not been knowingly and voluntarily made, the circuit court granted his petition for a writ of error coram nobis and vacated his 1999 drug-related conviction.

## II.

The State contends, as noted, that the circuit court erred in ruling that laches did not bar Jones's request for coram nobis relief. It pointed out that Jones could have challenged the validity of his guilty plea at any time, either while he was serving his initial eighteen-month sentence of imprisonment,[9] or later while he was on probation, or, even after that, while he was serving the additional three years of his previously suspended sentence for having violated the terms of his probation. The State maintains, however, that his failure to do so (during the first nine years of the thirteen-year period that ran between initial imposition of sentence and the filing of his coram nobis petition) has severely prejudiced its ability to retry Jones, since the arresting officer, having made thousands of such arrests in the interim, no longer had any recollection of the crime.

In response, Jones attempts to reframe the issue by suggesting that we should not consider, "whether there was an unreasonable delay in challenging the validity of the guilty plea," but rather, the far narrower question of "whether there was an unreasonable delay in filing the coram nobis petition." To answer the latter question, Jones invokes *Skok v. State*,

---

[9]Even if Jones were granted conditional release, *see* Md. Code (1999, 2008 Repl. Vol.),§ 7-501 of the Correctional Services Article ("CS"), based upon diminution credits for good conduct, CS § 3-704, prior to the full eighteen-month original sentence (which we cannot determine from the record), he nonetheless "remain[ed] in legal custody until the expiration of" that eighteen-month period. CS § 7-502(a).

8

361 Md. 52 (2000), in which the Court of Appeals held that, to be entitled to coram nobis relief, a petitioner must, among other things, be facing "significant collateral consequences" as a result of his conviction. *Id.* at 79. Jones claims that he was not unreasonably dilatory in filing his coram nobis petition, as he was not facing a "significant collateral consequence" of his 1999 Maryland conviction, until 2012, when, upon pleading guilty to the federal firearms charge, he was subject to a mandatory enhanced sentence.

Jones further asserts that the circuit court "correctly recognized" that his coram nobis petition "would have been denied" if it had been filed before October 1, 2012, the date upon which the newly enacted CP § 8-401 became effective. He points out that, once that statutory corrective became effective, he immediately petitioned for a writ of error coram nobis. He then concludes his argument by suggesting that the only prejudice that we should consider is whether the State was prejudiced in its ability to defend against the coram nobis petition and not whether the State was prejudiced in its ability to re-prosecute Jones should his petition for coram nobis relief be granted.

A writ of error coram nobis is a "civil action in Maryland, independent of the underlying action from which it arose," *Skok*, 361 Md. at 65, in which a "convicted person who is not incarcerated and not on parole or probation, who is suddenly faced with a significant collateral consequence of his or her conviction, [can] . . . challenge the conviction on constitutional or fundamental grounds," *id.* at 78. But that right has its limits. "[T]he doctrine of laches is a defense to a petition for writ of error coram nobis action filed for the

9

purpose of challenging a criminal conviction."[10]  *Moguel v. State*, 184 Md. App. 465, 471 (2009).

Generally, "laches 'is a defense in equity against stale claims and is based upon grounds of sound public policy by discouraging fusty demands for the peace of society.'" *Liddy v. Lamone*, 398 Md. 233, 243–44 (2007) (quoting *Ross v. State Bd. of Elections*, 387 Md. 649, 671 (2005)).  Although "[t]here is no inflexible rule as to what constitutes, or what does not constitute, laches," *id.* at 244 (quoting *Ross*, 387 Md. at 669), it is "well settled that laches 'applies when there is an unreasonable delay in the assertion of one's rights and that delay results in prejudice to the opposing party.'"  *Id.* (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 117 (2000)).  "Unlike waiver," however, laches "allows the . . . court to consider both the prejudice to the [opposing party] and the reasons for delay." *Holmes*, 401 Md. at 487 (Raker, J., dissenting).  That is to say, "[t]he application of laches entails a two-prong analysis:  1) there must be an unreasonable delay in a party's assertion of his rights, and 2) the delay must result in prejudice to the opposing party." *Moguel*, 184 Md. App. at 478.  "Prejudice is 'generally held to be anything that places [the opposing party] in a less favorable position.'"  *Liddy*, 398 Md. at 244 (quoting *Ross*, 387 Md. at 670).

---

[10]Jones contends that *Moguel* was "wrongly decided" and asks that we find that laches does not apply to coram nobis petitions.  As Jones acknowledges, however, he never raised that claim below and has, therefore, failed to preserved it for appellate review.  Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court . . . .").  In any event, we reject Jones's contention that *Moguel* was wrongly decided.

Accepting the facts as found by the coram nobis court, unless clearly erroneous, we shall review de novo its legal conclusion that Jones's claim is not barred by laches. *Id.* at 248–49. Predictably, that review begins with our analysis of the first prong of the laches defense, which is whether there was "an unreasonable delay in a party's assertion of his rights."

### *Unreasonable Delay*

We begin our study of the unreasonable-delay prong of the laches defense, with the disquieting observation that Jones had an opportunity to challenge the validity of his guilty plea during the approximately nine years that passed from the time that the plea was entered until he was released from custody. And, although Maryland law does not require that the pursuit of a coram nobis writ be preceded by the filing of a post-conviction petition, it does not condone an unreasonable delay in the quest for coram nobis relief when that delay prejudices the opposing party.

First of all, Jones had thirty days after sentencing, under what is now Maryland Code (1974, 1998 Repl. Vol.), § 12-302(e)(2) of the Courts and Judicial Proceedings Article,[11] and Maryland Rule 8-204(b)(2)(A),[12] to file an application for leave to appeal in which he could have raised his current claim that his guilty plea had not been knowing and voluntary.

[11]In 1999, at the time of Jones's conviction, the same provision was found under Md. Code (1974, 1998 Repl. Vol.), §12-302(e) of the Courts and Judicial Proceedings Article.

[12]In 1999, at the time of Jones's conviction, the same provision was found under Md. Rule 8-204(b)(1) (1999).

11

He then had a nine-year period of time, beginning in 1999, upon the imposition of his sentence, and ending in 2008, upon its expiration, to challenge the voluntariness of his guilty plea under the Uniform Postconviction Procedure Act.[13] That Act permits someone who is "convicted of a crime" and "incarcerated under sentence of . . . imprisonment or on parole or probation" to institute a proceeding, in the circuit court where he was convicted, to call into question a "sentence or judgment" on the grounds that it "was imposed in violation of the Constitution of the United States or the Constitution or laws of this State." Md. Code (1957, 1996 Repl. Vol., 1999 Supp.), § 645A(a)(1) of Article 27.

To be more precise, Jones had the right to file a post-conviction petition under the Uniform Postconviction Procedure Act while he was serving the unsuspended eighteen-month portion of his six-year prison sentence; while he was serving his ensuing term of probation; and, finally, while he was serving the three years of his previously suspended prison sentence for violating the conditions of that probation. Thus, at any time during a period of approximately nine years ending in 2008, from the imposition of his sentence in 1999, through his subsequent term of probation, and until his ensuing

_____

[13]At the time when Jones's sentence was imposed, the Uniform Postconviction Procedure Act was codified at former Article 27, §§ 645A through 645J. In 2001, that act was re-codified at Criminal Procedure Article, CP §§ 7-101 through 7-301, without any substantive change that is relevant here. 2001 Md. Laws, ch. 10, § 2, at 222–32.

12

incarceration for the violation of that probation, Jones could have challenged his guilty plea.[14]

And Jones has offered no explanation for his failure to do so.

Nor can it be said that during that length of time he had no reason to question the lawfulness of his guilty plea. Indeed, he had ample reason to then launch such a challenge, as during that time, he faced the direct consequences of his guilty plea, that is, he was imprisoned and then placed on probation, with restrictive conditions, together with the threat of more imprisonment, upon a violation of that probation. Moreover, Jones presumably knew that any future crime he committed would place him in the position of a repeat offender and thus subject him to harsher penalties, upon conviction of such a crime, even in the absence of a sentence-enhancing statute. Indeed, it would be most perplexing for the State to be put in the position of being unable to re-prosecute him simply because he chose not to check the sentences he might receive before committing another crime of a similar nature.

Under the foregoing circumstances, we conclude that Jones unreasonably delayed in the assertion of his rights. *Liddy*, 398 Md. at 244. To be more specific, it was unreasonable for Jones to fail to pursue his claim that his guilty plea was not knowing and voluntary during

---

[14]Since 1995, *see* 1995 Md. Laws, ch. 258, at 2091-92, the Uniform Postconviction Procedure Act has had a ten-year statute of limitations, which may be waived only if "extraordinary cause is shown." Md. Code (1957, 1996 Repl. Vol., 1999 Supp.), Art. 27, § 645A(a)(2)(ii) (re-codified without substantive change at CP § 7-103(b)). Consequently, Jones was eligible for post-conviction relief during the entire time while his sentence was in effect.

the nine years immediately following his conviction, as he had both the opportunity and reason to do so.

Nonetheless, Jones, wishing to narrow the question, insists that he did not unreasonably delay in filing his coram nobis petition because, until he pleaded guilty to the federal firearm possession charge, he did not face a "significant collateral consequence" and was therefore ineligible for coram nobis relief. (By that time, Jones also satisfied the other principal requirement for eligibility for coram nobis relief, namely, that no other "statutory or common law remedy [was] then available," *Skok*, 361 Md. at 80, as he was no longer imprisoned or on probation and was thus no longer eligible for post-conviction or habeas corpus relief.) He further contends that, prior to the enactment of CP § 8-401, effective on October 1, 2012, any petition for coram nobis relief he filed would have been futile as, before that time, his failure to file an application for leave to appeal would have been deemed a waiver of his right to seek coram nobis relief under *Holmes*.

Jones's argument is misleading. It attempts to focus the Court's attention on his claim that his delay in filing his coram nobis petition was not unreasonable because he filed it as soon as he could, that is, at a time when he was facing an enhanced sentence and after CP § 8-401 had eliminated the waiver issue. But such reasoning does not really address the unreasonableness of his delay, as he could have challenged his guilty-plea in a post-conviction petition at any point during the nine years that he was either incarcerated or on probation.

14

Jones is correct, however, that, once coram nobis became a viable means by which he could challenge his guilty plea, he did not unreasonably delay in filing his coram nobis petition. But he fails to distinguish between a delay in asserting one's rights and a delay in using a particular vehicle for asserting those rights. And laches plainly "applies when there is an unreasonable delay in the assertion of one's rights." *Liddy*, 398 Md. at 244. Consequently, the "laches" clock began ticking when those rights have been purportedly violated and a remedy is available. *See* 30A C.J.S. *Equity* § 143 (2013) ("In ascertaining whether relief should be refused because of laches, lapse of time should generally be considered as running from the date when the alleged injury occurred . . . ."). Thus, Jones's failure to assert his rights by filing either an application for leave to appeal within thirty days of sentencing or a petition under the Uniform Postconviction Procedure Act within the roughly nine years of his sentence that followed his guilty plea must be included in the reasonableness analysis. And that delay, as we noted, was unreasonable.

### *Prejudice to the Opposing Party*

We now turn to the second prong of the laches analysis—whether Jones's unreasonable delay in asserting his rights resulted in prejudice to the State. The State suffered substantial prejudice as a result of Jones's delay in challenging his guilty plea, as that delay effectively rendered it unable to retry him for the crimes for which he was charged. At the hearing on Jones's coram nobis petition, former Baltimore City police officer, Shawn Johnson, who had observed the drug transaction that resulted in Jones's 1999 guilty plea,

15

testified that he did not remember Jones or his case and that a review of his "offense report" and the statement of charges that he had prepared were of no assistance because, while working for the police department, he had taken part in "[h]undreds, if not thousands" of drug investigations. And other possible witnesses, claims the State, either could not be located or had no recollection of the incident.

Moreover, the drugs that had been seized during the incident were, said the State, "no longer available." Given those circumstances, which are the result of Jones's delay in challenging his guilty plea, the State was severely hampered in its ability to retry Jones, as there was little, if any, chance of bringing his case to trial, let alone successfully prosecuting it, once the petition was granted. In sum, it appears that the State has suffered substantial prejudice from what we have determined to be Jones's unreasonable delay in challenging the voluntariness of his guilty plea.

Finally, Jones's suggestion that "prejudice refers to the State's ability to defend against the coram nobis petition" and not "the ability to successfully re-prosecute" him is unpersuasive. Prejudice is "'generally held to be anything that places [the opposing party] in a less favorable position.'" *Liddy*, 398 Md. at 244 (quoting *Ross*, 387 Md. at 670). Certainly, the inability to re-prosecute Jones because of his delay in challenging his guilty plea has done more than place the State in a "less favorable position" than it would have been in had Jones brought his challenge without unreasonable delay, as it effectively ended the possibility of his re-trial.

16

As for the authorities Jones cites, *Bartz v. State*, 740 So. 2d 1243 (Fla. Dist. Ct. App. 1999), and *Gregersen v. State*, 714 So. 2d 1195 (Fla. Dist. Ct. App. 1999), in support of his argument that prejudice refers only "to the State's ability to defend against the coram nobis petition," we have reviewed those decisions and do not find that they preclude consideration of whether the State is prejudiced by a resultant inability to retry a defendant. Indeed, those cases do not address whether the latter form of prejudice should be considered when the State pleads laches in opposition to a coram nobis petition, because, in both of those cases, the unavailability of the defendant's plea-colloquy transcript, caused by the petitioners' lengthy and inexcusable delays in seeking coram nobis relief, was held to have sufficiently prejudiced the State as to bar the claims.

Moreover, as to coram nobis proceedings, in federal courts, the prejudice element of laches is at least as broad as the common-law standard we enunciated in *Moguel*. *See*, *e.g.*, *Telink, Inc. v. United States*, 24 F.3d 42, 48 (9th Cir. 1994) (observing that "[i]n making a determination of prejudice, the effect of the delay on both the government's ability to respond to the petition and the government's ability to mount a retrial are relevant." Thus, in considering whether an unjustified delay in filing a coram nobis petition has resulted in prejudice to the State, the difficulties the State may face, should it be forced to retry the defendant, must be considered. When we do so here, we are impelled to conclude that the circuit court erred in granting Jones's petition for a writ of coram nobis because his

17

unreasonable delay in challenging his guilty plea caused substantial prejudice to the State, and, thus, his petition is barred by laches.

We recognize that our holding relies heavily upon Jones's failure to pursue post-conviction relief during the nine-year period when he was eligible to do so. We further note that our holding, although, ostensibly in conflict with *Lopez v. State*, 433 Md. 652 (2013), is actually not. In *Lopez*, the Court of Appeals considered whether the State could raise a laches defense against a petitioner, convicted and sentenced prior to the 1995 enactment of the ten-year statute of limitations in the Uniform Postconviction Procedure Act, *see* 1995 Md. Laws, ch. 258, at 2091–92, who delayed more than nineteen years in filing a post-conviction petition. *Lopez*, 433 Md. at 654–55. Although the Court held that the State was precluded from raising a laches defense, it based that holding squarely upon the fact that the pre-1995 version of the Uniform Postconviction Procedure Act, which was then in effect, permitted a petition to be filed "at any time." *Id.* at 656–62.

In contrast, Jones was convicted and sentenced in 1999, after the enactment of the 1995 amendment to the Uniform Postconviction Procedure Act, and there is thus no conflict with *Lopez*, as that decision did not address the applicability of laches to a post-conviction petition subject to the post-1995 version of the statute. And, since coram nobis is a common-law, rather than a statutory, remedy which may only be invoked after a convicted defendant is no longer eligible for post-conviction relief, *Skok*, 361 Md. at 80, it follows that, even if Jones had been subject to the pre-1995 version of the statute, his unjustified delay in

18

pursuing an available remedy, under the Uniform Postconviction Procedure Act, though not a bar to seeking post-conviction relief, could still be properly considered in deciding whether laches bars his coram nobis petition.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. COSTS TO BE PAID BY APPELLEE.**